PETERSON, J.
North Brevard Hospital, d/b/a Parrish Medical Center, (“Parrish”), appeals a judgment determining that Horace Mitchell’s medical bills in the amount of $56,254.84, for a sixteen-day stay at Parrish, were not the responsibility of the Bre-vard County Board of County Commissioners, (“Brevard County”), because Mitchell was a furloughed prisoner during the medical stay and not an inmate of the Brevard County Jail.
Mitchell was serving a sentence in the Brevard County Jail for possession, sale and delivery of cocaine and retail theft when he became ill and required medical treatment. The Brevard County Sheriff obtained an order of the court to furlough Mitchell to Parrish as an inpatient and to return Mitchell to the jail upon discharge from Parrish.
After the furlough order was issued, a Brevard County Sheriffs employee transported Mitchell to Parrish, and in his official capacity signed the admission form. Although this issue is disputed by Brevard County, Parrish reports that a Brevard County Sheriffs deputy transported Mitchell back to jail after his medical stay.
Parrish supports its entitlement to payment from Brevard County by citing to section 901.35, Florida Statutes, which provides:
901.35 Financial responsibility for medical expenses.—
(1) Notwithstanding any other provision of law, the responsibility for paying the expenses of medical care, treatment, hospitalization, and transportation for any person ill, wounded, or otherwise injured during or at the time of arrest *1202 for any violation of a state law or a county or municipal ordinance is the responsibility of the person receiving such care, treatment, hospitalization, and transportation. The provider of such services shall seek reimbursement for the expenses incurred in providing medical care, treatment, hospitalization, and transportation from the following sources in the following order:
(a) From an insurance company, health care corporation, or other source, if the prisoner is covered by an insurance policy or subscribes to a health care corporation or other source for those expenses.
(b) From the person receiving the medical care, treatment, hospitalization, or transportation.
(c) From a financial settlement for the medical care, treatment, hospitalization, or transportation payable or accruing to the injured party.
(2) Upon a showing that reimbursement from the sources listed in subsection (1) is not available, the costs of medical care, treatment, hospitalization, and transportation shall be paid:
(a) From the general fund of the county in which the person was arrested, if the arrest was for violation of a state law or county ordinance; or
(b) From the municipal general fund, if the arrest was for violation of a municipal ordinance.
The responsibility for payment of such medical costs shall exist until such time as an arrested person is released from the custody of the arresting agency.
The statute has been interpreted to impose liability for medical care to prisoners on a governmental entity upon proof of a prisoner’s inability to pay. See, e.g., Comeau v. State, 611 So.2d 68 (Fla. 1st DCA 1992). The language of the statute imposes responsibility upon Brevard County for Mitchell’s medical bills for an “ill[ness] ... during ... the time of arrest”, which we interpret to mean in the custody of the arresting agency. Brevard County’s argument that Mitchell was not in their custody during the medical treatment because he was on furlough seems incongruous in the light of the facts:
1. The court order of furlough was secured upon the request of jail officials who believed that medical treatment at a hospital was necessary.
2. Parrish was selected as the medical provider by officials, not Mitchell.
3. The furlough order restricted Mitchell’s movement to Parrish for medical treatment.
4. Mitchell was transported to Parrish by the Sheriff.
5. The furlough order required Mitchell’s return to jail after the medical treatment at Parrish.
6. Although disputed, Mitchell was most likely transported from Parrish to the jail by the Sheriff, after medical treatment.
One cannot fault Brevard County or the trial court in its attempt to circumvent section 901.35. The implications of the statute can be financially devastating to a local government in view of the ever increasing cost of medical care, especially when the Legislature has not placed a cap on the liability of government. See generally, Joseph G. Jarret, The High Cost of Arrestee Medical Treatment: The Effects of F.S. § 901.S5 on Local Government Coffers, 78 Fla. B.J. 46 (Nov. 2004); Op. Atty. Gen. 85-6, Feb. 4, 1985 (opining that section 901.35 requires a county to draw from its general fund to reimburse a provider of medical care for treating persons ill or *1203 injured at the time of arrest, regardless of whether the person’s condition arises from or is attributable to the circumstances of the arrest; in other words, reimbursement applies to all illnesses or injuries that arrested person had at time of arrest).[1] Of course, the other consideration is the cost to the medical provider who renders services to a prisoner. Why should it bear the costs of providing services to a prisoner? The solution, albeit a most difficult one, is solely within the hands of the Legislature, not the courts.
We must, therefore, vacate the judgment of the trial court rendered after granting summary judgment and remand for further proceedings. On remand the court is to consider the following issues:
1. Whether Mitchell was indigent and unable to pay. See, e.g., Metro. Dade Co. v. P.L. Dodge Foundations, Inc., 509 So.2d 1170 (Fla. 3d DCA 1987) (recognizing that requirement of duty to provide medical care for person in custody does not, in itself, create duty to pay; in order for duty to pay to arise, it must first be established that prisoner-patient is indigent).
2. Whether other sources for payment of medical services were available to Mitchell.
3. Whether Parrish’s medical charges were reasonable.
JUDGMENT VACATED and REMANDED.
SAWAYA, C.J., and MONACO, J., concur.

. There appears to be no limit on a local government's liability for the medical treatment of an arrestee. It also appears that a trial court is without authority to impose as a condition of probation, the requirement that probationer reimburse local government for his or her medical costs. E.g., Morran v. State, 662 So.2d 1339 (Fla. 2d DCA 1995) (holding that statutes authorizing county to seek reimbursement for medical costs do not authorize trial court to impose those costs as condition of probation); Comeau v. State, 611 So.2d 68 (Fla. 1st DCA 1992) (holding that trial court was not authorized to impose, as condition of probation, requirement that defendant make restitution to county for medical care that county had duty to provide for injuries suffered in fall during incarceration in county jail). The Legislature needs to remedy these unreasonable impositions upon government when natural illnesses occur through no fault of prison officials.